UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON S. APODACA, | ) | NO. EDCV 06-294-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed a Complaint on March 15, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability insurance benefits ("DIB"). On April 6, 2006, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on December 20, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, alternatively, remanding the case for a new hearing; and Defendant

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

requests that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her DIB application on October 2, 2001. (Administrative Record ("A.R.") 18, 68, 287.)  She claims to have been disabled since January 22, 2001, due to carpal tunnel syndrome and problems with her knees; she also complains of diabetes, and arthritis in her hands, shoulders, ankles and knees.[2]  (A.R. 18, 68, 88, 97, 122, 234, 282, 287.)  Plaintiff has past relevant work experience as a senior purchasing assistant, senior statistical typist, and purchasing-commodity clerk.  (A.R. 18, 101-04, 109.)

The Commissioner denied Plaintiff's claim initially on February 2, 2002, and upon reconsideration on August 9, 2002.  (A.R. 287.)  On February 10, 2003, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 31-51.)  On March 4, 2003, the ALJ denied Plaintiff's DIB claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 3-5, 18-24, 287.)

Plaintiff sought relief in the United States District Court for the

---

[2]     Plaintiff has received from the Social Security Administration "old-age (retirement) insurance benefits since attainment of the age of sixty-two."  (A.R. 291; *see also* A.R. 379.)  Thus, Plaintiff, who was born on January 7, 1942 (A.R. 68), has received retirement benefits since on or about January 7, 2004.

Central District of California.   Pursuant to a stipulation of the
parties, on March 10. 2004, this Court remanded the matter.  (A.R. 360-
65.)  Among other things, the Court's order of remand directed the ALJ
"to make findings as to the physical and mental demands of Plaintiff's
past jobs and reconsider whether Plaintiff can perform her past work."
(A.R. 360-61.)  On April 14, 2004, the Appeals Council vacated the ALJ's
decision and remanded the matter for further proceedings consistent with
this Court's order, including the requirement that the ALJ make findings
about the physical demands of Plaintiff's former jobs.  (A.R. 359).

On October 14, 2005, Plaintiff, who was represented by counsel,
again testified at a hearing before the ALJ.  (A.R. 371-83.)  On January
12, 2006, the ALJ again denied Plaintiff's DIB claim.  (A.R. 287-91.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his January 12, 2006 written decision, the ALJ found that
Plaintiff had not engaged in substantial gainful activity during the
period at issue.  (A.R. 289.)   The ALJ found that Plaintiff has
impairments consisting of:  bilateral carpal tunnel syndrome, left
greater than right; minimal degenerative changes in the
acromioclavicular joints and cervical spine; mild degenerative changes
in the lumbar spine; non-insulin dependent diabetes mellitus with
possible early peripheral neuropathy; chronic neck, shoulder, and wrist
strain; diverticulosis; hypercholesterolemia; controlled hypertension;
controlled hypothyroidism; and history of depression.  (*Id.*)  The ALJ
determined that Plaintiff does not have an impairment or combination of
impairments listed in, or medically equivalent to an impairment listed

3

in, Appendix 1, Subpart P, Regulation No. 4. (A.R. 290.) In addition, the ALJ found that, although Plaintiff's impairments could reasonably produce her alleged symptoms, her statements concerning the intensity, duration, and limiting effect of these symptoms were not entirely credible. (*Id.*)

The ALJ determined that Plaintiff has the residual functional capacity (or "RFC") to: lift, carry, push, or pull twenty pounds occasionally, and ten pounds frequently; sit, stand or walk constantly with normal breaks; climb, stoop, kneel, crouch, or crawl frequently; and "hand or finger frequently." (A.R. 290.) The ALJ further found that Plaintiff should avoid frequent exposure to extreme heat or cold, vibration, and hazards such as unprotected heights. (*Id.*) Relying upon the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a purchasing agent, which is light to sedentary in nature and semi-skilled.[3] (A.R. 291.) The VE testified that there were 8,000 such jobs regionally and over 50,000 nationally. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the period at issue. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial

---

[3] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

4

1   evidence.   <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).   The
2   Commissioner's decision must stand if it is supported by substantial
3   evidence and applies the appropriate legal standards.   <u>Saelee v. Chater</u>,
4   94 F.3d 520, 521 (9th Cir. 1996).   Substantial evidence is "more than a
5   mere scintilla but less than a preponderance -- it is such relevant
6   evidence that a reasonable mind might accept as adequate to support the
7   conclusion."   <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

8

9       Although this Court cannot substitute its discretion for that of
10  the Commissioner, this Court nonetheless must review the record as a
11  whole, "weighing both the evidence that supports and the evidence that
12  detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of</u>
13  <u>Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
14  <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is
15  responsible for determining credibility, resolving conflicts in medical
16  testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
17  1035, 1039-40 (9th Cir. 1995).   This Court must uphold the
18  Commissioner's decision if it is supported by substantial evidence and
19  free from legal error, even when the record reasonably supports more
20  than one rational interpretation of the evidence. *Id.* at 1041; *see also*
21  <u>Morgan v. Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.
22  1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

23

24                              **DISCUSSION**

25

26      Plaintiff alleges two issues.   <u>First</u>, she contends that the ALJ
27  failed to consider a treating physician's opinion. <u>Second</u>, she contends
28  that the ALJ failed to apply Grid Rule 202.06, which, if properly

5

applied, would have resulted in a finding of disability.

**A.    The ALJ Committed Reversible Error.**

Plaintiff's first issue rests on the June 13, 2001 opinion of Dr. Phillip A. Sobol, her treating physician and an orthopedic surgeon (A.R. 133-52), and the medical evidence relating to her "fingering" abilities.

While Dr. Sobol was Plaintiff's treating physician, he evaluated her for purposes of a then-pending worker's compensation proceeding. Dr. Sobol opined, in pertinent part, that:  Plaintiff had a "work restriction"[4] precluding her from "repetitive fine manipulation/finger dexterity activities as in writing or typing"; and, based on this finding (among others) and Plaintiff's job description "requiring prolonged and repetitive bilateral upper extremity fingering [and] manual dexterity," Plaintiff was "physically incapable of returning to her pre-injury job duties and [was] therefore medically eligible for vocational rehabilitation."  (A.R. 148, 150.)

---

[4]    Dr. Sobol was a "qualified medical evaluator" ("QME") for purposes of California worker's compensation proceedings.  (A.R. 167.) California's Department of Industrial Relations, Industrial Medical Council has prepared for QMEs and other doctors who evaluate such claims a "Physician's Guide to Medical Practice in the California Worker's Compensation System" ("Guide," available at www.dir.ca.gov).

The Guide provides that a physician must cover four factors of disability in a disability evaluation -- objective factors, subjective factors, work restrictions, and loss of pre-injury capacity -- before opining on causation and apportionment, and future medical treatment needed.  *See* Guide, pp.41, 99-106 (3d ed. 2001).  Dr. Sobol, however, did not assess expressly Plaintiff's loss of pre-injury capacity in his June 13, 2001 report.  (*See* A.R. 144-50.)

6

Plaintiff contends that, in finding Plaintiff to be capable of "frequent" fingering and of performing her prior work, the ALJ failed to consider Dr. Sobol's opinion properly under the governing legal standards. Defendant counters that the ALJ considered Dr. Sobol's Opinion adequately, but appropriately interpreted the medical evidence to establish other findings.

1.   **The ALJ's Treatment Of Do. Sobol's Opinion**

The record shows that the ALJ addressed and treated Dr. Sobol's June 13, 2001 opinion (the "Sobol Opinion") as follows:

In his March 4, 2003 decision,[5] the ALJ discussed portions of the Sobol Opinion as well as a February 5, 2001 progress report by Dr. Sobol, including testing performed, treatment received, and work restrictions assessed. (A.R. 19-20.) The ALJ also discussed (A.R. 20-21) the December 17, 2001 report of a consultative examiner, Dr. Jagvinder Singh, an internist (A.R. 204-10). The ALJ briefly discussed (A.R. 21) the assessment of two state agency physicians, who did not examine Plaintiff (A.R. 226-33, 282-84).

While the ALJ correctly noted that Dr. Singh did not specifically define Plaintiff's handling and fingering limitations (A.R. 21), the ALJ failed to acknowledge Dr. Singh's statement that Plaintiff may have

---

[5]   The ALJ did not mention the Sobol Opinion at all in his January 12, 2006 decision. (A.R. 287-91.) Instead, the ALJ incorporated his 2003 decision by reference and, for purposes of assessing Plaintiff's fingering limitation, relies on the 2005 opinion of a consultative examiner, as discussed *infra*. (A.R. 288, 290.)

manipulative limitations due to problems with her fine and gross finger movements, based on her carpal tunnel syndrome (A.R. 209). The ALJ also asserted that both state agency physicians "expressly found no restriction on fingering" (A.R. 21); however, like the ALJ's observation regarding Dr. Singh's report, this statement is not wholly accurate. The record shows that the first reviewing physician disputed the opinions of Dr. Sobol and Dr. Singh that Plaintiff is limited in her fine finger manipulation (A.R. 232), and found Plaintiff "unlimited" in this respect, although "limited" in her "handling," *i.e.,* gross manipulation (A.R. 229). While the second state agency physician did not express a specific opinion on the degree of Plaintiff's fingering and handling limitations, he *did* opine that the "evidence still supports" imposing "manipulative . . . limitations." (A.R. 284.)

The ALJ's treatment of Dr. Sobol's opinion also is troubling. While the ALJ initially characterized the Sobol Opinion as "couched in worker's compensation terminology," he then stated that it was relatively consistent with Dr. Singh's consultative opinion. (A.R. 21.) The ALJ asserted that Dr. Sobol's use of the term "repetitive" in the work restriction he assessed for Plaintiff (*i.e.,* precluding "repetitive fine manipulation/finger dexterity activities as in writing and typing") constituted a worker's compensation term of art which equated to a finding of the fourth factor identified in Note 4, *supra* (*i.e.,* "pre-injury capacity") at a 50 percent reduction level. However, as noted earlier, Dr. Sobol did not expressly assess the pre-injury capacity factor for Plaintiff, which California deems to be a "separate" analysis and factor for assessing disability. (*See* Guide at 46.) Presumably, had Dr. Sobol, a qualified medical examiner, meant to opine that

8

Plaintiff had sustained a 50 percent reduction in her fingering abilities, he would have expressly stated such a finding in his Opinion.

Even if, *arguendo*, the ALJ was correct in inferring that Dr. Sobol's use of the term "repetitive" constituted an opinion that Plaintiff had lost 50 percent of her pre-injury capacity for fingering, the ALJ's treatment of the Sobol Opinion remains problematic. The ALJ correctly noted that Plaintiff described her work as requiring nearly full-time fingering. Indeed, her hearing testimony and work history report descriptions are quite clear and explanatory on this issue. (A.R. 21-22.)[6] The ALJ, however, opined that Plaintiff's descriptions of her jobs were "not reasonable." (A.R. 23.) The ALJ asserted that Plaintiff's inclusion of duties such as "reading reports, clarifying discrepancies, and distributing reports and other office materials"

---

[6]    *See* A.R. 34 - Plaintiff's testimony at the February 10, 2003 hearing that, as a senior purchasing assistant, she worked at her keyboard and computer "[a] full eight hours"; 102 - Plaintiff's Work History Report description of her job as Senior Purchasing Assistant, in which she spent nine hours out of her ten-hour workday writing, typing, or handling small objects, with duties including writing reports on small business liability insurance and accounting discrepancies), using fax machines and copiers, and delivering packages and supplies several times a week to various employees; 103 - describing Plaintiff's job as a Senior Statistical Typist, in which she spent seven hours out of her eight-hour workday writing, typing, or handling small objects, with duties including typing technical standards and specifications, creating, editing and reproducing forms, proofreading and editing, and distributing supplies, documents for signature, and files; 104 - describing Plaintiff's job as Purchasing/Commodity Clerk, in which she spent eight hours out of her ten-hour workday writing, typing, or handling small objects, with duties including using computers and printers, initiating returns, interacting regarding accounting discrepancies, teaching purchasing procedures, and twice weekly delivery of office supplies; 124 - Plaintiff's similar description of her jobs on Social Security form HA-4632, in which she lists data processing as her primary duty; 134 - Dr. Sobol's note that Plaintiff described her job as encompassing "prolonged and repetitive computer keyboarding"; and A.R. 150 - Dr. Sobol's notation that Plaintiff described her job as entailing "prolonged and repetitive bilateral upper extremity fingering, manual dexterity [and] fine manipulative movements."

9

within her work history report was "inconsistent" with her statement that, with the exception of one to two hours each day, she spent her time writing, typing, and handling small objects. (A.R. 22.) The ALJ rendered a factual determination that Plaintiff, instead, actually spent only between very little to up to two-thirds of her workday performing fingering operations in her prior jobs.[7] (*Id.*)

Notwithstanding Dr. Sobol's conclusion that Plaintiff could not perform her prior jobs, the ALJ concluded, based on his own characterization of Plaintiff's former job duties, that, because Dr. Sobol purportedly opined that Plaintiff had lost no more than 50 percent of her fingering capacity, Dr. Sobol's restriction on "repetitive" fingering did not preclude Plaintiff from performing her prior jobs. (A.R. 22.) The ALJ further asserted that Dr. Singh's consultative report established that Plaintiff's condition had improved and that, by December 2001, she was able to perform "frequent" fingering and, thus, her past jobs. (A.R. 22.)

In his post-remand decision of January 12, 2006, the ALJ acknowledged that he had been directed to make findings as to the physical demands of Plaintiff's past jobs and to reconsider whether she can perform her past relevant work. (A.R. 287.) The ALJ's 2006 decision, however, is devoid of any discussion of the physical demands

---

[7]     The ALJ stated that the inclusion of the above-noted additional duties "would suggest [Plaintiff's] fingering operations were more than occasional and less than frequent." (A.R. 22.) In Social Security parlance, "frequent" "means occurring one-third to two-thirds of an 8-hour workday" and "occasional" "means occurring from very little up to one-third of an 8-hour workday." *See* Social Security Administration Form SSA-4734BK (1-89), used for Physical Residual Functional Assessments, which defines these terms.

of Plaintiff's past jobs, other than to note that the vocational expert described them as "light to sedentary in nature and semi-skilled." (A.R. 291; *see also* A.R. 380 - vocational expert's testimony in this respect.)  The record also does not reveal any attempt by the ALJ to develop the record on this issue.[8]  Instead, the ALJ simply re-imposed his finding that Plaintiff is capable of "frequent" fingering, based on the August 4, 2005 report of Dr. Bunsro T. Sophon, an orthopedist, who performed a consultative examination at the request of the Commissioner. (*Id.*; *see also* A.R. 292-97 - Dr. Sophon's report limiting Plaintiff to "frequent manipulation and fingering with both hands.")  Based on the vocational expert's testimony, the ALJ concluded that Plaintiff can perform two of her three past positions.[9]  (A.R. 291.)

2.   **The ALJ's Rejection Of Dr. Sobol's Opinion Was Improper**.

The following general review principles are germane to the Court's analysis:

---

[8]    Although Plaintiff testified at the second hearing on October 14, 2005, the ALJ did not ask her any questions relating to her prior jobs.  (A.R. 373-80.)  The Administrative Record also does not contain any supplemental documentary evidence bearing on this issue.

[9]    The ALJ stated that Plaintiff still could perform the job of "purchasing agent" based on the vocational expert's testimony.  A review of the pertinent testimony reveals that the vocational expert only ruled out Plaintiff's former position of Senior Statistical Typist, opined that Plaintiff could perform her two prior positions of Senior Purchasing Assistant and Purchasing/Commodity Clerk, and stated the number of such jobs existing regionally and nationally.  (A.R. 380-82.)  Thus, the ALJ's reference to "purchasing agent" apparently indicated a finding that Plaintiff could perform two of her former positions.

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p; *see also* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(treating physician's opinion is given greater weight, because he is employed to cure and has a greater opportunity to know and observe the patient as an individual). Broad and vague reasons will not suffice for rejecting a treating physician's opinion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001)(*citing* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is inconsistent with other substantial evidence of record, it is entitled to deference. Holohan, 246 F.3d at 1202 (*citing* Social Security Ruling 96-2p). When contradicted, the ALJ may reject the treating physician's opinion only if "'specific and legitimate' reasons supported by substantial evidence in the record" are provided. *Id.* (*citing* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)).

In general, the source of a referral for an examination or treatment does not justify rejecting a medical opinion unless "the opinion itself provides grounds for suspicion as to its legitimacy." Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996). Likewise, the purpose for which a medical report was obtained is not a legitimate basis for rejecting it absent other evidence to undermine its credibility. Reddick, 157 F.3d at 726; *see also* Lester, 81 F.3d at 832

1   ("the purpose for which medical reports are obtained does not provide a
2   legitimate basis for rejecting them").

4       The terms employed in worker's compensation disability ratings are
5   not equivalent to Social Security terminology. Desrosiers, 846 F.2d at
6   576.  When, as here, the physician opinion in issue was rendered in
7   connection with a worker's compensation proceeding, the ALJ may not
8   disregard the opinion simply because it may have been "couched in the
9   terminology used in such proceedings." Booth v. Barnhart, 81 F. Supp.
10  2d 1099, 1105 (C.D. Cal. 2002); *see also* Coria v. Heckler, 750 F.2d 245,
11  248 (3d Cir. 1984)(explaining that the ALJ "should evaluate the
12  objective medical findings set forth in the medical reports for
13  submission with the worker's compensation claim by the same standards
14  that s/he uses to evaluate medical findings in reports made" for Social
15  Security claims).  The ALJ has a responsibility to "'translate' terms of
16  art contained in such medical opinions into the corresponding Social
17  Security terminology in order to accurately assess the implications of
18  those opinions for the Social Security disability determination."
19  Booth, 81 F. Supp. 2d at 1106; *see also* Macri v. Chater, 93 F.3d 540,
20  544 (9th Cir. 1996)(in analyzing medical reports using worker's
21  compensation standards, the ALJ is entitled to draw inferences which
22  flow logically from the evidence).

24       Finally, it is well-established that the ALJ has a duty to fully
25  and fairly develop the record, even when the claimant is represented by
26  counsel. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.
27  2001); Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir.
28  1993)(Commissioner has an affirmative duty to develop the record, even

13

if the claimant is represented by counsel).  This duty is triggered when the evidence is ambiguous or the ALJ finds that "the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150.  *See also* 20 C.F.R. § 404.1512(e) (duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. § 404.1512(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

Under these principles, the Court finds that the ALJ erred in his treatment of the Sobol Opinion.  First, as noted above, it is unclear that Dr. Sobol's use of the term "repetitive" in his work restriction constituted a finding as to the specific, quantifiable degree to which Plaintiff's fingering was limited.  The Sobol Opinion is peppered with a liberal, and unexplained, use of the term "repetitive" in several contexts (*e.g.,* to describe Plaintiff's job duties, to describe subjective factors, and in connection with numerous of the assessed work restrictions), and its use in these varying contexts appears descriptive rather than technical.  The ALJ's assumption that the use of the phrase "repetitive" equated to a term of art finding as to Plaintiff's reduction in pre-injury fingering capacity appears speculative.  Indeed, the ALJ acknowledged that Dr. Sobol's terminology "has little direct application in this social security case."  (A.R. 21.)  At a minimum, the physician's unexplained use of this term rendered the Sobol Opinion ambiguous on this issue.  *See* Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry

14

. . . .").   Accordingly, although the ALJ's duty to develop the record was triggered, it was not met.

   Second, the Court finds the ALJ's recharacterization of Plaintiff's job duties highly inappropriate.  The ALJ did not question Plaintiff about the issue at either of the two hearings.  The uncontradicted evidence of record establishes that Plaintiff spent all but one to two hours each day writing, typing, or handling small objects.  If the ALJ found the uncontradicted evidence regarding Plaintiff's job duties to be ambiguous or felt he needed clarification, he could, and should, have developed the record on this issue, particularly given this Court's directive, as well as that of the Appeals Council, that the ALJ make findings as to the physical demands of Plaintiff's past jobs.  He could not, however, simply, draw his own conclusion that the evidence of record was "inconsistent" with Plaintiff's performance of several other duties -- none of which on their face, either individually or collectively, appear to be particularly time-consuming and some of which were stated to be performed only one to three times per week.  There simply was no factual basis for the ALJ's conclusions that Plaintiff's uncontradicted description of her jobs was "not reasonable" and that her fingering operations "were more than occasional and less than frequent" (A.R. 22) -- a finding that appears to have been designed to allow the ALJ to reach a particular determination, rather than one supported by the evidence.  The ALJ's finding in this respect clearly was error.  *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(an ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result).

15

1    Third, as described above, the ALJ bolstered his finding that
2    Plaintiff can perform "frequent" fingering by relying on the failure of
3    Dr. Singh, the first consultative examiner, and the state agency
4    physicians to impose handling and fingering manipulations.   But, as
5    further described above, these opinions do not constitute substantial
6    evidence for the ALJ's conclusion, because:   Dr. Singh opined that
7    Plaintiff likely does have manipulative limitations (A.R. 209); and one
8    of the state agency physicians opined that the evidence supported
9    imposing manipulative limitations (A.R. 284).   Even if neither physician
10   imposed specific fingering limitations, their opinions were indicative
11   of the need to impose such limitations.   The ALJ's characterization of
12   these opinions was, at a minimum, disingenuous.   *See* Reddick, 157 F.3d
13   715, 723 (9th Cir. 1998)(it is impermissible for the ALJ to develop an
14   evidentiary basis by "not fully accounting for the context of materials
15   or all parts of the testimony and reports").

16

17       Fourth and finally, the ALJ's post-remand reliance on Dr. Sophon's
18   opinion does not, in itself, constitute substantial evidence to support
19   the "frequent" fingering limitation imposed, in view of the ALJ's
20   failure, as described above, to state specific and legitimate reasons
21   for rejecting the contrary Sobol Opinion.   *See, e.g.,* Magallanes, 881
22   F.2d at 751 (the ALJ may reject the opinion of a treating physician in
23   favor of the opinion of an examining physician only by making "findings
24   setting forth specific, legitimate reasons for doing so that are based
25   on substantial evidence in the record").   The Court notes further than
26   Dr. Sophon performed his consultative examination in August 2005, after
27   Plaintiff had received the benefit of physical therapy treatment, and
28   almost five years after Plaintiff stopped working at jobs requiring

nearly constant keyboard use.  It thus is not unsurprising that, by the date of Dr. Sophon's examination, Plaintiff may have experienced a reduction in pain and/or an increase in her fingering abilities due to her cessation of the activity causing and aggravating her carpal tunnel syndrome.  Dr. Sophon's after-the-fact opinion is not particularly probative on the question of whether Plaintiff was disabled as of January 22, 2001, her claimed onset date, particularly given the nature of the injury in question, which is one caused by repetitive stress.

As discussed above, the ALJ engaged in an improper and baseless re-characterization of Plaintiff's job duties.  By doing so, he purported to avoid and reject Dr. Sobol's opinion that Plaintiff cannot perform her prior jobs because, among other things, she cannot engage in prolonged and repetitive fingering and fine manipulation.  The ALJ further mischaracterized portions of the record in support of his rejection of Dr. Sobol's Opinion.  Following remand, the ALJ failed to satisfy the direction that he make findings as to the physical demands of Plaintiff's former jobs, and instead, he simply relied on a belated consultative examination that does not constitute substantial evidence.  Under these circumstances, reversible error occurred.

**B.    <u>Remand Is Required.</u>**

Having found the ALJ's decision deficient, the Court must decide whether to award benefits or remand for further proceedings.  Where, as in this case, the ALJ disregarded the treating physician's opinion without stating specific and legitimate reasons, but a potential ambiguity exists as to that opinion, remand is appropriate to allow the

ALJ to develop the record as needed and then assess the treating physician's opinion appropriately and undertake any further needed proceedings.[10]  *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(when ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); <u>McAllister</u>, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///

---

[10]    Plaintiff's second issue rests on the premise that, had the ALJ accepted Dr. Sobol's opinion *in toto*, application of Grid Rule 202.06 would have dictated a finding of disability.  Because open questions remain regarding the effect of the Sobol Opinion that warrant remand, the Court need not, and does not, resolve Plaintiff's second issue.

1    IT IS FURTHER ORDERED that the Clerk of the Court shall serve
2  copies of this Memorandum Opinion and Order and the Judgment on counsel
3  for Plaintiff and for Defendant.

4

5       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7  DATED: September 28, 2007

8                                              /s/
                                        MARGAREI A. NAGLE
9                                   UNITED STATES MAGISTRATE JUDGE

19